UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARJANG DANTE PANAH,

                Petitioner,

v.                                      **DECISION AND ORDER**
                                            02-CR-147S

UNITED STATES OF AMERICA,            05-CV-337S

                Respondent.

---

## I. INTRODUCTION

Petitioner Arjang Dante Panah appeared before this Court on August 2, 2002, executed a Waiver of Indictment, and pled guilty to a one count Information charging that he possessed with intent to distribute five-hundred (500) grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). This Court accepted Panah's guilty plea and, on May 10, 2004, sentenced him to 72 months' imprisonment. Panah's judgment of conviction became final on June 10, 2004.[1]

On May 13, 2005, Panah filed a motion, *pro se*, pursuant to 28 U.S.C. §2255.[2] Therein, Panah requests that this Court correct his sentence due to his counsel's failure to object to the Probation Department's erroneous calculation of his criminal history score in the Pre-Sentencing Report ("PSR"). (Motion ¶ 12.) For the reasons set forth below, the

---

[1] Panah's Judgment was entered on May 26, 2004 and, because no appeal was filed, judgment became final ten days thereafter, exclusive of Saturdays, Sundays, and the Memorial Day Holiday. Moshier, v. United States, 402 F. 3d 116, 118 (2d Cir. 2005); Fed. R. App. P. 4(b) and 26(a)(2).

[2] The Government filed an Answer and Memorandum of Law in opposition to the motion. (Docket No. 49.) Pahah filed a Reply Memorandum (Docket No. 51) and a supporting Affidavit. (Docket No. 52).

motion is denied.

## II. BACKGROUND

By signing his plea agreement, Panah stipulated to the following facts. In early August 2000, Panah had a telephone conversation with an individual ("CS-1") cooperating with the United States Drug Enforcement Agency ("DEA"), in which he discussed traveling from California to Buffalo, N.Y. to deliver to CS-1 approximately two pounds of methamphetamine. Panah arrived in Buffalo on August 11, 2000, met with CS-1, indicated that he was prepared to sell to CS-1 two of the four pounds of methamphetamine he had in his possession, and provided CS-1 with two samples. During a search of Panah's hotel room on August 12, 2000, DEA agents discovered approximately 1795.7 grams of a mixture containing d-methamphetamine hydrochloride. (Docket No. 26 ¶ 6.)

The violation to which Panah pled carries a mandatory minimum term of 10 years' imprisonment with a maximum sentence of life imprisonment. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Docket No. 26 ¶ 1. The parties stipulated that Federal Sentencing Guidelines §§ 2D1.1 (a)(3) and 2D1.1(c)(3) applied to the offense, providing for a base offense level of 34. (Docket No. 26 ¶ 7.) The government agreed not to oppose a recommendation for a three level downward departure based on Panah's acceptance of responsibility. *Id.* ¶ 8. The plea agreement also reflected the government's understanding that Panah had a criminal history category of II. *Id.* ¶ 10. A total offense level of 31 and criminal history category of II resulted in a Guidelines sentencing range of 121 to 151 months. *Id.* ¶ 11.

However, the parties further stipulated, at paragraphs 10 and 12 of the plea agreement, that the Court makes the final determination as to a defendant's criminal

history category and offense level and that Panah he had no right to withdraw his plea of guilty based on that determination.

On August 2, 2002, before accepting Panah'a guilty plea, this Court conducted a hearing in compliance with Rule 11 of the Federal Rules of Criminal Procedure. Panah confirmed that he had fully consulted with his attorney and understood his advice (PT[3] at 3), and further stated that he held a bachelor's degree (PT at 8), had no difficulty understanding the Court or his attorney (PT at 9), was "very satisfied" with his attorney's representation (PT at 9), and understood the charges against him and the maximum sentence he would have faced had he gone to trial (PT at 11-12).

When the Court reviewed Panah's likely sentencing exposure based on the offense level and criminal history category in the plea agreement (PT at 15), Panah stated his belief that his criminal history category should be a I, rather than a II (PT at 16-17). Referring to the plea agreement, the Court noted that "these numbers don't lock anything in" and [t]hey're the best judgment of how things will likely work out." (*Id.*)

> THE COURT: If my numbers differ with the calculations, with the criminal history number, whether it's lower **or higher**, you're bound to accept my calculations, but at this point none of these are locked in, and you cannot withdraw your plea of guilty if you disagree, if I find that it's a two and not a one, you're stuck with that basically. You cannot withdraw your plea of guilty. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor, I do.

(PT at 17-18) [emphasis supplied].

Prior to Panah's sentencing, the Probation Department calculated a criminal history

---

[3] References to "PT" are to the transcript of the August 2, 2002 plea allocution, and references to "ST" are to the transcript of the May 10, 2004 sentencing.

score of III, rather than II, and included that finding in the PSR. (ST at 2; Docket No. 44 (sealed).) On April 28, 2004, Panah's attorney filed Defendant's Statement with Respect to Sentencing Factors, confirming Panah's concurrence with the findings in the PSR. (Docket No. 41.)

At sentencing, the Court noted that "the plea agreement referenced a [criminal history category of] two, but it turns out with a point total it's a three, and that's a proper calculation in my view," to which Panah's counsel replied, "Right." (ST at 6.) The Court went on to hear argument on the government's 5K1.1 motion for downward departure based on Panah's substantial assistance to the government. (Docket No. 26 ¶ 23; ST at 4-12.) The government sought a four level downward departure and Panah's counsel argued for the six level departure discussed in the plea agreement. *Id.* Although the Court expressed reservations about Panah's credibility and post-plea conduct, he granted the six level downward departure based, in part, on the "different calculation of the criminal history score." (ST at 10-12.)

The Court afforded Panah an opportunity to speak prior to sentencing and he did not raise any objection to the criminal history score of III. (ST at 15-19.) The Court then sentenced Panah to 72 months' imprisonment, at the low end of the Guideline range of 70-87 months applicable to an offense level of 25 and a criminal history category of III, and far less than the sentencing range contemplated in the plea agreement. (ST at 12, 22.) Panah did not appeal his sentence.

### III. DISCUSSION

In his § 2255 motion, Panah claims that he was denied effective assistance of counsel at sentencing because his attorney failed to object to the calculation of Panah's

4

criminal history score in the PSR, despite the concerns he raised before and during sentencing. (Motion ¶ 12.)  According to Panah, "[t]he inaccuracy complained of . . . pertains to a state charge under which I was not convicted or sentenced."  (Docket No. 52 ¶ 7.)  In his Reply, Panah further states that his attorney misled the Court at sentencing, in violation of Rule 32 of the Federal Rules of Criminal Procedure, by indicating that he had reviewed the PSR with Panah and there were no objections to the criminal history score. (Docket No. 51 at 4.)

The government argues that Panah's waiver of the right to collaterally attack his sentence was knowing and voluntary and that the claimed ineffective assistance of counsel at sentencing does not render that provision of the plea agreement unenforceable.  For the reasons stated below, the Court agrees with the government's position.

A.   **Waiver of Appeal Rights**

As a part of his plea agreement, Panah:

> knowingly waive[d] the right to appeal, modify pursuant to Title 18 United States Code, Section 3582 (c)(2) and collaterally attack any sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment [of 121 to 151 months] . . . notwithstanding the fact that the Court may reach the sentence by a Guidelines analysis different from that set forth in this agreement.

(Docket No. 26, ¶ 18.)  Panah does not dispute that the sentence he received falls well below the contemplated range.

The Second Circuit has consistently upheld the validity and enforceability of plea agreements stipulating to such waivers.  *See, e.g.* United States v. Roque, 421 F.3d 118, 124 (2d Cir. 2005), *cert. denied sub nom*, Delahoz v. United States, __ U.S. __, 126 S. Ct. 1094, 163 L. Ed. 2d 908 (2006); United States v. Morgan, 406 F. 3d 135, 137 (2d Cir.

2005), *cert. denied*, __ U.S. __, 126 S. Ct. 549, 163 L. Ed. 2d 465 (2005); United States v. Salcido-Contreras, 990 F.2d 51, 51 (2d Cir. 1993) ("waivers of a defendant's right to appeal a sentence within an agreed Guidelines range are enforceable"), *cert. denied*, 509 U.S. 931, 113 S. Ct. 3060, 125 L. Ed. 2d 742 (1993).  Appeal waivers are presumptively enforceable and limited exceptions have been found only where it can be shown that: 1) the waiver was not made knowingly, voluntarily, and competently; 2) the sentence imposed was based on constitutionally impermissible factors; 3) the government breached the plea agreement; or 4) the court failed to enunciate any rationale for the sentence.  Campusano v. United States, 442 F. 3d 770, 774 (2d Cir. 2006) (*quoting* United States v. Gomez-Perez, 215 F. 3d 315, 319 (2d Cir. 2000)).

### 1. Panah's Plea was Knowing and Voluntary

While Panah does not claim the first exception, this Court, as a preliminary matter, reviews the record to confirm whether his plea was a knowing and voluntary one.  As set forth fully at Point II, *supra*, Panah was represented at his plea proceeding by counsel with whom he was satisfied and he repeatedly expressed his full understanding of the terms of the plea agreement and the proceeding.  With regard to the specific issue now raised in his motion, Panah stated his understanding that the Court would make a final determination as to both his offense level and criminal history score, either of which could go up or down from those anticipated in the plea agreement. (PT at 17-18.)

Based upon Panah's responses and representations on August 2, 2002, this Court was "convinced after going over this with you, that your plea of guilty is a knowing plea . . . [and] it's voluntary . . . ." (PT at 21-22.)  Upon reviewing the plea allocution, this Court finds no basis to alter its prior conclusions. United States v. Juncal, 245 F. 3d 166, 171 (2d

Cir. 2001) (a defendant's plea allocution carries "a strong presumption of accuracy" and absent any 'substantial reason,' negates later claims that the plea was unknowing."). Thus, the plea agreement waiver is enforceable unless Panah can demonstrate the existence of another recognized exception to enforceability. United States v. White, 3:01 CR 212 (CFD), 3:02 CV 1912 (CFD), 2005 U.S. Dist. LEXIS 12243, at *5-6 (D. Conn. June 20, 2005).

### 2. Panah's Allegations do not Implicate a Constitutional Violation

The Second Circuit has indicated that a waiver provision will be found unenforceable where the plea agreement was formed without the effective assistance of counsel. *See, e.g.*, United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001); United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (per curium); United States v. Ready, 82 F.3d 551, 555 (2d Cir. 1996). This is because ineffective assistance at the pre-plea stage would call into question the constitutionality of the process by which the defendant waived his appeal rights in the first place.

Here, Panah clearly represented that he was "very satisfied" with his counsel in connection with the plea negotiations and plea proceeding and does not now advance any complaints in that regard. His sole challenge is to his counsel's conduct at sentencing. Panah speculatively contends that he would have received a sentence lower than 72 months had his counsel sought and obtained a criminal history score of II.[4] In other words, Panah's motion attacks the merits of his sentence.

In the context of a challenge to a sentence, a waiver agreement is fully enforceable

---

[4] The sentencing range applicable to Panah's offense level with a criminal history category of II would have been 63-78 months.

7

even where ineffective assistance of counsel is claimed. Djelevic, 161 F.3d at 107 ("emphatically" rejecting petitioner's contention that counsel's failure to make certain arguments at sentencing relative to her offense level rendered the appeals waiver unenforceable); *see also*, United States v. Garcia, 166 F. 3d 519, 522 (2d Cir. 1999) (poorly disguised attacks on the merits of a sentence do not render the plea agreement unenforceable); Hightower v. United States, 05-CV-0538A, 03-CR-080A, 2006 U.S. Dist. LEXIS 33765, at *7 (W.D.N.Y. May 17, 2006) (counsel's failure to make a downward departure motion at sentencing did not render the appeals waiver unenforceable); Tam v. Department of Homeland Security, 04-CR-109S, 05-CV-202S, 2006 U.S. Dist. LEXIS 33745, at *18-19 (W.D.N.Y. May 16, 2006) (counsel's failure to object to the PreSentence Investigation Report did not render the appeals waiver unenforceable where the plea process itself passed constitutional muster). Accordingly, Panah's allegations, which relate solely to counsel's post-plea representation, do not implicate a constitutional violation that would negate the enforceability of the waiver provision.

Panah's further argument that his counsel violated Rule 32(i)(1)[5] of the Federal Rules of Criminal Procedure by misleading the Court into believing that counsel had reviewed the PSR with Panah and that there were no objections to the reported criminal history score (Docket No. 51 at 1, 4.) reflects a fundamental misunderstanding of that Rule. Rule 32 defines the Court's duty at sentencing;[6] it does not impose a duty on counsel.

---

[5] Prior to the 2002 restyling of the Criminal Rules, the provisions of Rule 32(i)(1) were found at Rule 32(c)(3)(A), to which Panah refers.

[6] Even assuming Panah meant to direct this allegation to the Court, rather than counsel, it is evident that no violation of Rule 32(i)(1) occurred. Consistent with the Rule's directive, the Court confirmed that counsel had received the PSR (ST at 2) and that he had "gone over it, read it, reviewed it, [and] discussed it with Mr. Panah" (ST at 3). Counsel was given the opportunity to comment on the PSR (Fed. R. Crim. P. 32(i)(1)(C); ST at 5-6) and Panah was afforded the opportunity to speak and present

Because Panah's plea was knowing and voluntary and because there is no allegation or indication that he received ineffective assistance of counsel in violation of the Sixth Amendment prior to entering his plea, the appeals waiver provision of the plea agreement is valid and enforceable. Therefore, there is no need to reach the merits of Panah's post-plea ineffective assistance claim.[7] Djelevic, 161 F.3d at 107.

## IV. CONCLUSION

For the reasons stated above, the files and records submitted on Petitioner Arjang Dante Panah's Motion to Vacate, Set Aside or Correct Sentence conclusively show that Petitioner is not entitled to the relief requested. Accordingly, the motion is denied.

Because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and denies a certificate of appealability.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962). Further requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements

---

mitigating information (Fed. R. Crim. P. 32(i)(4)(A); ST at 15). Accordingly, even if it were properly advanced, Panah's claim in this regard is without merit. United States v. Cortez, 841 F. 2d 456, 460 (2d Cir.1988); United States v. Sambino, 799 F.2d 16, 17 (2d Cir.1986) (per curiam).

[7] Without undertaking the analysis, the Court notes that Panah does not identify the state charge that was purportedly included in the PSR in error, nor does he present any evidence in support of his contention that he was not convicted or sentenced on the unspecified charge.

of Rule 24 of the Federal Rules of Appellate Procedure.

**ORDERS**

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Docket No. 47) is DENIED.

FURTHER, that a certificate of appealability is DENIED.

FURTHER, that leave to appeal as a poor person is DENIED.

FURTHER, that the Clerk of this Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: July 20, 2006
       Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge